UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

J.G., individually, and as parent and natural
guardian of minor, A.S.,

                                 Plaintiffs,

     -against-

YORKTOWN CENTRAL SCHOOL DISTRICT,
RALPH NAPOLITANO, Ed.D., individually and as
Superintendent of Yorktown Central School District,
JOSEPH DeGENNARO, individually and as Principal
Of Yorktown High School, RANDALL GLADING,
Ph.D, individually and as Assistant Principal of
Yorktown High School,

                                 Defendants.

-------------------------------------------------------------x

**COMPLAINT**

PLAINTIFF DEMANDS
TRIAL BY JURY

**13 CV  0648**

JUDGE SEIBEL

      Plaintiffs, J.G., individually, and as parent and natural guardian of minor, A.S., by

their attorneys, the Law Office of Todd J. Krouner, respectfully allege:

## INTRODUCTION

      1.      A.S., a 14-year-old, Honor Roll student, with no prior disciplinary record

was suspended from Yorktown High School ("YHS"), for one year, for possession of a

marijuana cigarette at school.  In addition to the arbitrary and capricious disciplinary

action, Defendants have failed to fulfill their promise and statutory obligation to educate

the student.  Accordingly, Plaintiffs seek damages, as permitted by State and Federal law,

including, without limitation, those for Plaintiffs' emotional distress, current and future

medical and related counseling bills, current and future educational and related expenses,

punitive damages, costs and attorneys' fees.  Additionally, Plaintiffs seek the issuance of

an injunction directing that Defendants permanently and fully expunge from A.S.'s records, any and all references to any disciplinary penalty or suspension, in connection with the foregoing incident, and permit A.S. to return to her studies at YHS during the pendency of this action.

2.     This is an action arising from the disciplinary action that was imposed on A.S., a freshman at YHS, located in the Yorktown Central School District (the "School District"), Yorktown, New York, arising from A.S.'s possession of a marijuana cigarette at school.  The disciplinary action imposed by Defendants, violated Plaintiffs' substantive due process right, in that it was arbitrary and capricious, and failed to adhere to standards of fundamental fairness, as the disciplinary action imposed was not appropriate to the serious nature of the offense and did not consider the absence of any previous disciplinary record.  Furthermore, Defendants violated Plaintiffs' procedural due process rights in imposing a disciplinary action without advising Plaintiffs of their rights, or the consequences of waiving those rights, in violation of the laws of the State of New York and the United States Constitution.

3.     On January 2, 2013, J.G., mother and natural guardian of minor, A.S., was informed by YHS's Assistant Principal, Defendant Randall Glading ("Dr. Glading"), that A.S. had been in possession of a marijuana cigarette, at school, on December 21, 2012. Dr. Glading informed J.G. that as a result, A.S. would be suspended from school for five days; and, thereafter, she would be required to complete three counseling sessions with the school therapist.

4.     Counseling sessions were scheduled accordingly in contemplation of the five-day suspension.

5.      On January 9, 2013, J.G. and A.S. appeared at a previously scheduled disciplinary hearing.  Based on her January 2, 2013 conversation with Dr. Glading, and the scheduling of the counseling sessions after the five-day suspension, J.G. understood that the hearing would be solely to confirm the five-day suspension.

6.      Prior to the commencement of the hearing, J.G. and A.S. were "railroaded" and advised by Defendants that the School District sought to suspend A.S. for one academic year, but that A.S. would be permitted to return to school, on a probationary basis, in three months  J.G. and A.S. were threatened that if they did not agree to the one year suspension, and continued to a hearing, the Hearing Officer may impose a longer suspension.  Dr. Glading also assured J.G. and A.S. that A.S.'s academic performance would not suffer because, students who received one-on-one tutoring during a suspension have seen their grades increase.

7.      Thereafter, J.G. and A.S. were presented with a Waiver of Long-Term Suspension Hearing Rights and Probation Contract (the "Waiver"), which they signed under duress, and without being informed of their right to suspend the hearing to obtain counsel, and the consequences of waiving their rights.

8.      The Waiver stated that A.S. would be suspended from her studies "for the period, commencing 1/10/13 and ending 1/10/14."  However, A.S. "shall be readmitted, on a probationary basis, to attendance upon instruction at his/her school of attendance, effective 4/15/13."

9.      The suspension was for the incident complained of, and "in consideration of the student's past disciplinary record."

10.     A.S. had no prior disciplinary record.

11.     Furthermore, at no time prior to A.S.'s suspension, were J.G. or A.S., given the opportunity for an informal conference with Joseph DeGennaro, Principal of YHS ("Mr. DeGennaro"), at which J.G. and/or A.S., were authorized to present A.S.'s version of the events and to ask questions of the complaining witnesses.

12.     Finally, J.G. rescinded the Waiver prior to her receipt of a fully executed copy of the Waiver.

## THE PARTIES

13.     Plaintiff A.S., is a Russian immigrant and naturalized citizen of the United States, and is a minor who was born in 1998.

14.     J.G. is the mother and natural guardian of A.S., who at all times relevant to this action has resided with A.S., in the Town of Yorktown, New York.

15.     A.S. was born in Russia, and immigrated to the United States, with her mother in 2004, when A.S. was 6 years old.

16.     A.S. has no criminal history.

17.     Prior to the incident that underlies this action, A.S. had no prior disciplinary actions taken against her by the School District.

18.     A.S. has never been subject to any out of school disciplinary action.

19.     Prior to, and including, the incident that underlies this action, A.S. did not use marijuana or any other illegal substances.

20.     On or about January 13, 2013, A.S. received a letter signed by Mr. DeGennaro and Dr. Glading, congratulating A.S. on having achieved "Honor Roll status" and having earned a grade point average between 3.20 – 3.49, for the first academic quarter that ended on or about December 21, 2012.

21.     At all times relevant to this Complaint, A.S. was a student enrolled in the School District, as a freshman in YHS, and who, at all times relevant to this Complaint, was of compulsory education age.

22.     At all times relevant to this Complaint, A.S. possessed all rights guaranteed by the Fourteenth Amendment.

23.     At all times relevant to this Complaint, A.S. possessed all rights guaranteed by the New York State Constitution to attend school and to receive an education in the School District.

24.     At all times relevant to the Complaint, J.G. was legally responsible for the physical, emotional and financial well-being of A.S.

25.     Upon information and belief, the School District, is a public school district created and existing under Article 31 of the New York Education Law.

26.     Upon information and belief, the School District's principal offices are located at 2727 Crompound Road, Yorktown Heights, New York 10598.

27.     Upon information and belief, the School District establishes policy for the District.

28.     Defendant Ralph Napolitano, Ph.D. ("Dr. Napolitano"), is, and at all times relevant to this complaint was, the Superintendent of the School District.

29.     Upon information and belief, Dr. Napolitano establishes and implements policy for the School District.

30.     As Superintendent, Dr. Napolitano is responsible for the discipline of students in excess of a five-day suspension, and must comply with all applicable laws pertaining to such discipline.

31.     Defendant Mr. DeGennaro, is, and at all times relevant to this complaint was, the Principal of YHS.

32.     Upon information and belief, Mr. DeGennaro establishes and implements policy for the School District.

33.     As Principal, Mr. DeGennaro is responsible for the discipline of students for out of school suspensions, which do not exceed five days, and must comply with applicable laws pertaining to such discipline.

34.     Defendant Randall Glading, Ph.D. ("Dr. Glading"), is, and at all times relevant to this complaint was, an Assistant Principal at YHS.

35.     Upon information and belief Dr. Glading establishes and implements policy for the School District.

## JURISDICTION AND VENUE

36.     Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this is a civil action arising under the laws of the United States, namely 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1981 ("Section 1981") and the Fourteenth Amendment to the United States Constitution.  The Court has supplemental jurisdiction over the remaining causes of action pursuant to 28 U.S.C § 1367.

37.     Plaintiffs assert supplemental state law claims pursuant to the New York State Constitution and New York State Education Law.  This Court has jurisdiction to hear Plaintiffs' state claims pursuant to 28 U.S.C § 1367.

38.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee under 42 U.S.C. §§ 1983, 1988.

39.     Venue is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred within the boundaries of the Southern District of the United States District Court of the State of New York.

## FACTS

40.     On December 21, 2012, A.S. attended a "movie night" at YHS.  At that time, A. S. had a marijuana cigarette in her wallet.

41.     During the movie, A.S. told her friend that she had a marijuana cigarette in her wallet.

42.     Later that evening, A.S. was approached by another student, who is believed to be either a junior or senior at YHS (this student will be referred to herein as "Jane Smith").

43.     Jane Smith asked A.S. for the marijuana cigarette. A.S. gave the marijuana cigarette to Jane Smith.

44.     Upon information and belief, Jane Smith, is white and was born a United States citizen.

45.     Upon information and belief, to date, Defendants have taken no disciplinary action against Jane Smith.

46.     Two and a half weeks later, on January 2, 2013, A.S. was asked to meet with Dr. Glading, in his office, concerning A.S's possession of a marijuana cigarette on December 21, 2012.

47.     A.S. explained to Dr. Glading that she had not smoked the marijuana cigarette, nor had she intended to smoke the marijuana cigarette.

48.     Despite the sensitive nature of the meeting, Dr. Glading did not close his office door while speaking with A.S.

49.     Upon information and belief, as a result of Dr. Glading's failure to close his office door while speaking with A.S., other students at YHS overheard the conversation between Dr. Glading and A.S., causing A.S. embarrassment and other emotional harm.

50.     On January 2, 2013, after the conclusion of the school day, at approximately 2:30 p.m., J.G. and A.S. met with Dr. Glading, in Dr. Glading's office.

51.     Despite the Defendants' contention of the serious nature of the incident, this was the first time that the School District, or any of its agents or employees, had attempted to communicate with J.G. concerning the incident.

52.     At that time and place, Dr. Glading informed J.G. that A.S. had been in possession of a marijuana cigarette on December 21, 2012, and as a result, effective January 3, 2012, A.S. would be suspended from YHS for five days; and, thereafter would be required to complete three counseling sessions with the school therapist.

53.     J.G. had no prior knowledge of A.S.'s possession of marijuana, nor the School District's intent to suspend A.S. for five days.

54.     At that time and place, arrangements were made with A.S.'s student assistance counselor, for counseling sessions to commence on Thursday, January 10, 2013, which would have been A.S.'s first day back at school, following the five-day suspension.

55.     At no time prior to A.S.'s suspension, were either J.G., or A.S., given the opportunity for an informal conference with Mr. DeGennaro at which J.G. and/or A.S.,

were authorized to present A.S.'s version of the events, and to ask questions of the complaining witnesses.

56.     At no time prior to A.S.'s suspension, was either J.G., or A.S., informed of her right to an informal conference with Mr. DeGennaro at which J.G. and/or A.S., were authorized to present A.S.'s version of the events, and to ask questions of the complaining witnesses.

57.     On January 3, 2013, a letter from Ralph Napolitano, Ed.D., was delivered to Plaintiffs' home.  The letter stated that a hearing would be held on January 9, 2013, "for the purpose of determining whether or not A.S., a student of this District, shall be suspended from assigned classes and other school activities for a period in excess of five (5) school days."

58.     On January 9, 2013, J.G. and A.S. appeared at the disciplinary hearing.

59.     Based on her January 2, 2013 conversation with Dr. Glading and the scheduling of counseling sessions after the five-day suspension, J.G. understood that the hearing would be merely to confirm the five-day suspension.  Therefore, she did not seek the representation of counsel for the disciplinary hearing.

60.     Upon arriving at the hearing, J.G. and A.S. were met by the School District's attorney, Mr. DeGennaro and Dr. Glading.

61.     Although the School District was represented by counsel, J.G. did not have the benefit of counsel's presence.

62.     In the presence of Mr. DeGennaro and Dr. Glading, the School District's attorney told J.G. and A.S. that the School District sought to suspend A.S. for one

academic year, but that A.S. would be permitted to return to school, on a probationary basis, in three months.

63.     Upon information and belief, the one year suspension was proposed by the School District based upon the advice, and with the consent of Dr. Napolitano, Mr. DeGennaro and/or Dr. Glading.

64.     J.G. and A.S. were threatened that if they did not agree to the one-year suspension, and continued to a hearing, the Hearing Officer may impose a longer suspension.

65.     Dr. Glading also assured J.G. and A.S. that A.S.'s academic performance would not suffer because, students who received one-on-one tutoring during a suspension have seen their grades increase.

66.     J.G. and A.S. were not advised of their right to suspend the hearing to obtain legal counsel, and were never informed the consequences of waiving their rights.

67.     The Yorktown Central Schools District-Wide Student Code of Conduct, Policy #5300, re-adopted July 9, 2012 (the "Code"), acknowledges that disciplinary action will be taken "only when necessary and to place emphasis on the students' ability to grow in self-discipline." Id., 14. It further states that disciplinary penalties will be imposed after considering, "the student's age; the nature of the offense and the circumstances which led to the offense; the student's prior disciplinary record; information from parents, teachers and/or others, as appropriate; other extenuating circumstances." Id. Furthermore, "discipline will be progressive." Id.

68.     The Code acknowledges that the following disciplinary actions are authorized for the possession of illegal drugs at school or while at school functions:

10

    a.   in-school suspension;

    b.   suspension from school for up to five (5) school days;

    c.   suspension from school in excess of five (5) school days;

    d.   suspension of school for at least one (1) year;

    e.   placement in an interim alternative educational setting for a period of up to 45 school days.

The Code, p. 29.

69.    The disciplinary action imposed by Defendants is in derogation of the Code.

70.    Defendants' action in imposing a one year suspension is arbitrary and capricious and does not adhere to principles of fundamental fairness.

71.    J.G. and A.S. were presented with the Waiver, which they signed under duress, and without being informed of their right to suspend the hearing to obtain legal counsel, or the consequences of waiving their rights.

72.    The Waiver was not entered into by J.G. and/or A.S., voluntarily, knowingly and intelligently.

73.    The Waiver mis-represented A.S.'s prior disciplinary history.

74.    The Waiver suspended A.S. from her studies "for the period, commencing 1/10/13 and ending 1/10/14." However, A.S. "shall be readmitted, on a probationary basis, to attendance upon instruction at his/her school of attendance, effective 4/15/13."

75.    Upon information and belief, Jane Smith, who also possessed the marijuana cigarette on December 21, 2012, was not subject to disciplinary action.

76.     Dr. Napolitano was not present at the January 9, 2013 disciplinary hearing, and did not sign the Waiver in the presence of J.G. and/or A.S.

77.     By letter dated January 14, 2013, addressed to Dr. Napolitano, J.G. rescinded the Waiver.

78.     J.G.'s January 14, 2013 recission was sent to Dr. Napolitano by facsimile and certified mail-return receipt requested.

79.     At the time that J.G. rescinded the Waiver, J.G. had not received a counter-signed copy from Dr. Napolitano.

80.     Since the beginning of her suspension on January 3, 2013, to date, A.S. has received an average of 1.5 hours of tutoring per day.  As a student in YHS, A.S. received an average of 4.5 hours of education per day.

81.     The tutoring has teetered between virtually non-existent to demonstrably ineffective.

82.     As a result of the disproportionate disciplinary action, as compared to the offense, A.S. has and will continue to be harmed academically, emotionally and socially.

83.      A Notice of Claim, as to J.G.'s and A.S.'s state law claims, will be served contemporaneously with the Complaint.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF PLAINTIFFS' DUE PROCESS RIGHTS**
**IN VIOLATION OF 42 U.S.C. § 1983**

84.     Plaintiffs repeat and reallege Paragraphs 1 through 83, above.

85.     While acting under the color of state law, Defendants denied Plaintiffs' right to property without due process of law under the Fourteenth Amendment to the Constitution of the United States of America, when they failed to inform Plaintiffs of

their right to suspend the hearing to obtain legal counsel and the consequences of waiving their rights.

86.     While acting under the color of state law, Defendants' coerced Plaintiffs' into waiving their right to a fair hearing.

87.     While acting under the color of state law, Defendants' action in suspending A.S. for one year was arbitrary and capricious, and failed to adhere to standards of fundamental fairness.

88.     While acting under the color of state law, the School District denied Plaintiffs' right to property without due process of law under the Fourteenth Amendment to the Constitution of the United States of America, when it failed to inform Plaintiffs of their right to suspend the hearing to obtain legal counsel and the consequences of waiving their rights.

89.     While acting under the color of state law, the School District coerced Plaintiffs' into waiving their right to a fair hearing.

90.     While acting under the color of state law, the School District's action in suspending A.S. for one year was arbitrary and capricious, and failed to adhere to standards of fundamental fairness.

91.     While acting under the color of state law, Dr. Napolitano denied Plaintiffs' right to property without due process of law under the Fourteenth Amendment to the Constitution of the United States of America, when he failed to inform Plaintiffs of their right to suspend the hearing to obtain legal counsel and the consequences of waiving their rights.

92.    While acting under the color of state law, Dr. Napolitano coerced Plaintiffs' into waiving their right to a fair hearing.

93.    While acting under the color of state law, Dr. Napolitano's action in suspending A.S. for one year was arbitrary and capricious, and failed to adhere to standards of fundamental fairness.

94.    While acting under the color of state law, Mr. DeGennaro denied Plaintiffs' right to property without due process of law under the Fourteenth Amendment to the Constitution of the United States of America, when he failed to inform Plaintiffs of their right to suspend the hearing to obtain legal counsel and the consequences of waiving their rights.

95.    While acting under the color of state law, Mr. DeGennaro coerced Plaintiffs' into waiving their right to a fair hearing.

96.    While acting under the color of state law, Mr. DeGennaro's action in suspending A.S. for one year was arbitrary and capricious, and failed to adhere to standards of fundamental fairness.

97.    While acting under the color of state law, Dr. Glading denied Plaintiffs' right to property without due process of law under the Fourteenth Amendment to the Constitution of the United States of America, when he failed to inform Plaintiffs of their right to suspend the hearing to obtain legal counsel and the consequences of waiving their rights.

98.    While acting under the color of state law, Dr. Glading coerced Plaintiffs' into waiving their right to a fair hearing.

99.     While acting under the color of state law, Dr. Glading's action in suspending A.S. for one year was arbitrary and capricious, and failed to adhere to standards of fundamental fairness.

100.    As a result of the actions of the School District, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

101.    As a result of the actions of Dr. Napolitano, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

102.    As a result of the actions of Mr. DeGennaro, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

103.    As a result of the actions of Dr. Glading, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

104.    As a result of the actions of the School District, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

105.    As a result of the actions of Dr. Napolitano, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

106.    As a result of the actions of Mr. DeGennaro, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

107.    As a result of the actions of Dr. Glading, J.G. has, and will continue to sustain, serious emotional and financial harm

## SECOND CAUSE OF ACTION:
## VIOLATION OF PLAINTIFFS' RIGHT TO EQUAL PROTECTION
## UNDER THE LAW IN VIOLATION OF
## 42 U.S.C. § 1983

108.    Plaintiffs repeat and reallege Paragraphs 1 through 107, above.

109.    Defendants' actions constitute unconstitutional abridgements of Plaintiffs' affirmative right to equal protection of the laws under the Fourteenth Amendment. Defendants treated Plaintiffs differently from other similarly situated persons on the basis of Plaintiffs' national origin.

110.    The School District's actions constitute unconstitutional abridgements of Plaintiffs' affirmative right to equal protection of the laws under the Fourteenth Amendment.  The School District treated Plaintiffs differently from other similarly situated students on the basis of Plaintiffs' national origin.

111.    Dr. Napolitano's actions constitute unconstitutional abridgements of Plaintiffs' affirmative right to equal protection of the laws under the Fourteenth Amendment.  Dr. Napolitano treated Plaintiffs differently from other similarly situated persons on the basis of Plaintiffs' national origin.

112.    Mr. DeGennaro's actions constitute unconstitutional abridgements of Plaintiffs' affirmative right to equal protection of the laws under the Fourteenth Amendment.  Mr. DeGennaro treated Plaintiffs differently from other similarly situated persons on the basis of Plaintiffs' national origin.

113.    Dr. Glading's actions constitute unconstitutional abridgements of Plaintiffs' affirmative right to equal protection of the laws under the Fourteenth Amendment.  Dr. Glading treated Plaintiffs differently from other similarly situated persons on the basis of Plaintiffs' national origin.

16

114.    As a result of the actions of the School District, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

115.    As a result of the actions of Dr. Napolitano, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

116.    As a result of the actions of Mr. DeGennaro, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

117.    As a result of the actions of Dr. Glading, A.S. has, and will continue to sustain, serious, irreparable academic, emotionaland social harm.

118.    As a result of the actions of the School District, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

119.    As a result of the actions of Dr. Napolitano, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

120.    As a result of the actions of Mr. DeGennaro, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

121.    As a result of the actions of Dr. Glading, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

### THIRD CAUSE OF ACTION:
### VIOLATION OF PLAINTIFFS' RIGHT TO PRIVACY
### IN VIOLATION OF THE FAMILY EDUCATIONAL RIGHTS
### AND PRIVACY ACT, 20 U.S.C. § 1232g

122.    Plaintiffs repeat and reallege Paragraphs 1 through 121, above.

123.    Dr. Glading violated Plaintiff's right to the privacy of her student education record, when he spoke with A.S. on January 2, 2013, with his office door open, permitting other students at YHS to overhear the conversation between Dr. Glading and A.S., concerning her possession of a marijuana cigarette.

124.    As a result of the actions of Dr. Glading, A.S. has, and will continue to sustain, serious, irreparable emotional and social harm.

125.    As a result of the actions of Dr. Glading, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF PLAINTIFFS' DUE PROCESS RIGHTS**
**IN VIOLATION OF THE STATUTES AND CONSITUTION**
**OF NEW YORK STATE**

126.    Plaintiffs repeat and reallege Paragraphs 1 through 125, above.

127.    Defendants denied A.S.'s right to a free education, guaranteed by the statutes and constitution of the State of New York, without due process of law.

128.    The School District denied A.S.'s right to a free education, guaranteed by the statutes and constitution of the State of New York, without due process of law.

129.    Dr. Napolitano denied A.S.'s right to a free education, guaranteed by the statutes and constitution of the State of New York, without due process of law.

130.    Mr. DeGennaro denied A.S.'s right to a free education, guaranteed by the statutes and constitution of the State of New York, without due process of law.

131.    Dr. Glading denied A.S.'s right to a free education, guaranteed by the statutes and constitution of the State of New York, without due process of law.

132.    As a result of the actions of the School District, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

133.    As a result of the actions of Dr. Napolitano, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

134.    As a result of the actions of Mr. DeGennaro, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

135.    As a result of the actions of Dr. Glading, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

136.    As a result of the actions of the School District, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

137.    As a result of the actions of Dr. Napolitano, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

138.    As a result of the actions of Mr. DeGennaro, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

139.    As a result of the actions of Dr. Glading, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

### FIFTH CAUSE OF ACTION:
### INVALID CONTRACT

140.    Plaintiffs repeat and reallege Paragraphs 1 through 139, above.

141.    J.G. and A.S. were threatened that if they did not accept the School District's proposal of a suspension of one academic year, and they continued to the formal hearing, the Hearing Officer may impose a longer suspension.

142.    Accordingly, J.G. and A.S. signed the agreement not voluntarily, but under duress.

143.    Furthermore, J.G. rescinded the Waiver, prior to receipt of a copy of the Waiver that was counter-signed by Dr. Napolitano.

144.    As a result of the actions of the School District, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

145.    As a result of the actions of Mr. DeGennaro, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

146.   As a result of the actions of Dr. Glading, A.S. has, and will continue to sustain, serious, irreparable academic, emotional and social harm.

147.   As a result of the actions of the School District, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

148.   As a result of the actions of Mr. DeGennaro, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

149.   As a result of the actions of Dr. Glading, J.G. has, and will continue to sustain, serious, irreparable emotional and financial harm.

## CONCLUSION

WHEREFORE, judgment is respectfully demanded against Defendants as follows: the issuance of an injunction directing that A.S. return to her studies at YHS during the pendency of this action;

a.   on the First Cause of Action, awarding Plaintiffs damages in an amount to be determined at trial, including, without limitation, compensatory damages, damages due to emotional distress, and, punitive damages against Defendants;

b.   on the Second Cause of Action, awarding Plaintiffs damages in an amount to be determined at trial, including, without limitation, compensatory damages, damages due to emotional distress, and, punitive damages against Defendants;

c.   on the Third Cause of Action, awarding Plaintiffs damages in an amount to be determined at trial, including, without limitation, compensatory

damages, damages due to emotional distress, and, punitive damages against Defendants;

d.   on the Fourth Cause of Action, awarding Plaintiffs damages in an amount to be determined at trial, including, without limitation, compensatory damages, damages due to emotional distress, and, punitive damages against Defendants;

e.   the issuance of an injunction directing that the Defendants permanently and fully expunge from A.S.'s records any and all references to any disciplinary penalty or suspension in connection with the foregoing incident;

f.   on the above-stated causes of action, awarding Plaintiffs prejudgment interest, costs, attorneys' fees, and such other relief as the Court deems just and proper.

Dated: Chappaqua, New York
January 28, 2013

LAW OFFICE OF TODD J. KROUNER

By: _Diana M Carlino_
Todd J. Krouner (TK0476)
Diana M. Carlino (DC0122)
Law Office of Todd J. Krouner
*Attorneys for Plaintiffs*
93 North Greeley Avenue
Chappaqua, New York 10514
(914) 238-5800

To:   Yorktown Central School District
Ralph Napolitano, Ed.D.
Mr. Joseph DeGennaro
Randall Glading, Ph.D.

21